**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                              :
EMMITT WORTHY III,            :    CIVIL ACTION NO. 05-751 (MLC)
                              :
        Plaintiff,            :       **MEMORANDUM OPINION**
                              :
        v.                    :
                              :
DEPARTMENT OF CORRECTIONS,    :
et al.,                       :
                              :
        Defendants.           :
_____:
```

**COOPER, District Judge**

The defendants Joseph Fry ("SCO Fry") and Michael Edwards
("SCO Edwards") (collectively, the "SCO Defendants") move for
summary judgment pursuant to Federal Rule of Civil Procedure
("Rule") 56(c).  The Court, for the reasons stated herein, will
deny the motion without prejudice.

**BACKGROUND**

**I.   Facts**

The plaintiff pro se, Emmitt Worthy III ("Worthy"), is a
former state prisoner who was in the custody of the New Jersey
Department of Corrections ("NJDOC") while serving a 16-month term
for parole violations.  (See Hardrick Aff., at Ex. A, Worthy's
Inmate Face Sheet & Progress Notes.)  Worthy was confined at the
Administrative Segregation Unit ("Seg. Unit") of the New Jersey
State Prison in Trenton, New Jersey ("NJSP"), on December 20,
2003.  (Id.; Compl., at 2.)

Worthy alleges, and the SCO Defendants admit, that on December 20, 2003, another inmate, Antoine Anderson ("Anderson"), was assigned to be the "runner," and was responsible for collecting trays and trash after meals were served to the inmates in the Seg. Unit.  (Compl., at Ex. A, 12-24-03 Worthy SID Statement to NJDOC Special Investigations Division ("SID") ("12-24-03 Worthy SID Statement"); 8-24-05 Affidavit of Brenda Smith ("8-24-05 Smith Aff."), at Ex. A, 12-20-03 SCO Edwards Special Report ("SCO Edwards Rep.").)  SCO Edwards reported that after lunch and count, he thought SCO Fry had secured the Tier 1 gate and, as a result, opened Anderson's cell so he could pick up the trays from lunch.  (SCO Edwards Rep.)

Instead of picking up the trays, Anderson accessed the control box through an unsecured gate and opened Worthy's cell. (8-24-05 Smith Aff., at Ex. A, 12-20-03 Lt. J. Foley Special Report ("Foley Rep."); Compl., at 2, 3; 12-24-03 Worthy SID Statement.)  As Worthy exited his cell, Anderson ran down the tier, engaged in a verbal exchange with Worthy, and then began fighting with Worthy.  (Compl., at 2-4, 12-24-03 Worthy Statement; SCO Edwards Rep.; 8-24-05 Smith Aff., at Ex. A, 12-20-03 SCO Fry Special Report ("SCO Fry Rep."); 8-24-05 Smith Aff., at Ex. B, 12-20-03 Disciplinary Reports ("Discip. Rep."), 12-24-03 Adjudication ("12-24-03 Adj.").)  The SCO Defendants immediately responded to the fight, and Anderson and Worthy complied with their request to stop fighting.  (SCO Edwards Rep.; SCO Fry Rep.)

2

Worthy was taken to the medical department for examination and, as a result of the fight, he sustained a laceration to his scalp and was admitted for observation. (Compl., at 2, 3, & Ex. A, 12-20-03 Medical Report ("Med. Rep."); 12-24-03 Worthy SID Statement.) Worthy received four stitches in his scalp and denied any other pain. (Med. Rep.)

Anderson was charged with two disciplinary infractions because of his altercation with Worthy: (1) assaulting another person, and (2) being in an unauthorized area. (Discip. Rep.; 12-24-03 Adj.) Anderson admitted to (1) opening Worthy's cell, and (2) striking Worthy in the head. (Id.)[1] Because of the incident, NJSP issued a "Keep Separate" between Anderson and Worthy to prevent them from having contact with each other. (8-25-05 Smith Aff., at Ex. D, 12-24-03 Placement to Keep Separate.) NJDOC transferred Worthy to the Riverfront State Prison in Camden, New Jersey ("RSP"), on August 11, 2004. Worthy served his maximum sentence and was released from custody on June 6, 2005. (Hardrick Aff., at Ex. A.)

## II. Procedural History

Worthy brought this action under 42 U.S.C. § 1983 on February 4, 2005, alleging that the SCO Defendants violated his civil rights under the Eighth and Fourteenth Amendments to the United States Constitution. (Compl.) Worthy claims that the SCO

---

[1] Anderson stated that he assaulted Worthy because Worthy threw food at him while he was collecting the trays. (Id.)

Defendants are responsible for the injuries he sustained from the assault by Anderson because they either (1) deliberately opened his gate allowing Anderson to assault him, or (2) negligently left the gate open, thus permitting Anderson access to the control panel. (Compl.; 12-24-03 Worthy SID Statement.) Based on these alleged "malicious[] and sadistic[]" actions, Worthy contends that the SCO Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by (1) demonstrating deliberate indifference to his serious medical needs, and (2) failing to protect him from an assault by another prisoner. (Id. at 4-5.)[2]

The Court, on February 14, 2005, dismissed sua sponte (1) all claims against the NJDOC with prejudice, and (2) all claims against administrator Roy Hendricks ("Hendricks") without prejudice.[3] (Dkt. entry no. 2.) The Clerk of the Court entered default against the SCO Defendants — for failure to timely move or otherwise answer the complaint — on June 16, 2005. (Unnumbered dkt. entry btw. nos. 7 & 8.) The Court vacated the entry of default against the SCO Defendants on July 21, 2005, and ordered that they answer, move, or otherwise reply no later than August 29, 2005. (Dkt. entry no. 10.)

---

[2] Worthy also alleges that the SCO Defendants violated his rights under the Fourteenth Amendment. However, Worthy's complaint describes neither a due process nor an equal protection claim.

[3] Worthy has not reinstated a claim against Hendricks.

In lieu of an answer, the SCO Defendants move for summary judgment as to the remaining claims, arguing that (1) Worthy failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"); (2) they are entitled to qualified immunity; (3) they were not deliberately indifferent to any known risk of harm to Worthy; (4) any force used against Worthy was at most, _de minimis_, and thus not actionable; (5) Worthy's claims for damages against them in their official capacities are barred by Eleventh Amendment immunity; (6) Worthy cannot prove that he is entitled to punitive damages; and (7) Worthy's claims for injunctive and declaratory relief are moot because he has been released from prison.  (SCO Defs. Br., at 1.)

Worthy opposes the motion claiming that he exhausted all of his administrative remedies by "submitt[ing] a Department of Corrections Administrative Remedy form with an attached formal letter address[ed] to . . . Administrator, Roy L. Hendricks that went unanswered to no avail."  (Pl. Br., at ¶ 3 & Ex. A.)[4]  The Court, on December 23, 2005, requested that the SCO Defendants reply to Worthy's contention that his letter to the administrator constituted his satisfactory exhaustion of his administrative remedies.  (12-23-05 Ord., at 5.)  The SCO Defendants filed their reply on January 20, 2006.  (Dkt. entry no. 16.)

---

[4] _See_ 12-23-05 Ord., at 4 n.2 (acknowledging that Worthy's attempted opposition was deficient, but accepting it as being properly filed for purposes of addressing motion for summary judgment).

**DISCUSSION**

I.   **Standard For Summary Judgment**

Rule 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id.  The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant has met this prima facie burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).  A non-movant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule

6

56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]." <u>Id.</u> at 252. "By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Id.</u> at 247-48 (emphasis in original). A fact is material only if it might affect the action's outcome under governing law. <u>Id.</u> at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Id.</u> at 249-50 (internal citations omitted).

## II. The Exhaustion Of Administrative Remedies

A.   The Exhaustion Requirement under the PLRA

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[5]

---

[5] Failure to exhaust administrative remedies is an affirmative defense and the defendants "have the burden of pleading and proving the defense in a motion for summary judgment or at trial." <u>Kounelis v. Sherrer</u>, No. 04-4714, 2005 WL 2175442, at *6 (D.N.J. Sept. 6, 2005) (citing <u>Spruill v. Gillis</u>, 372 F.3d 218, 223 n.2 (3d Cir. 2004)).

The exhaustion of all administrative remedies is mandatory whether or not the prisoner believes such administrative remedies to be effective and even if the available administrative process cannot grant the desired remedy. <u>Booth v. Churner</u>, 532 U.S. 731, 739-41 (2001); <u>see</u> <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002) (explaining that (1) "exhaustion in cases covered by [section] 1997e(a) is . . . mandatory," (2) "[a]ll available remedies must . . . be exhausted," and (3) the remedies need "not meet federal standards, nor must they be plain, speedy, and effective"). Therefore, to comply with the PLRA, a prisoner must "properly (i.e., on pain of procedural default) exhaust administrative remedies as a prerequisite to a suit in federal court." <u>Spruill v. Gillis</u>, 372 F.3d 218, 222 (3d Cir. 2004).

The PLRA's exhaustion requirement applies to all inmate suits "about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." <u>Porter</u>, 534 U.S. at 532. "Complaints that corrections officers failed to protect an inmate from another prisoner involve 'prison conditions' within the meaning of the PLRA because they 'concern everyday aspects of an inmate's life in prison.'" <u>Dawud v. Talasnik</u>, No. 04-1015, 2005 WL 1881026, at *6 (D.N.J. Aug. 5, 2005) (citations omitted).

The Court, in determining whether a prisoner has properly exhausted his administrative remedies, must evaluate the prisoner's compliance with the prison's administrative regulations

governing inmate grievances, and the waiver, if any, of such regulations by prison officials. Spruill, 372 F.3d at 222.[6] "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial." Nyhuis v. Reno, 204 F.3d 65, 77-78 (3d Cir. 2000).

The PLRA exhaustion requirement contemplates that the prisoner is responsible for bringing a grievance to the attention of the appropriate prison official so that the official has an opportunity to respond to the grievance before resorting to the court system. Spruill, 372 F.3d at 227 (citation omitted); see Porter, 534 U.S. at 524-25 (indicating PLRA "afford[s] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"). Moreover, after bringing an initial complaint, the prisoner must carry his grievance through any available appeals process before filing suit. Nyhuis, 204 F.3d at 67. As such, a prisoner has not exhausted his administrative remedies until he has pursued his grievance through each level of appeal available to him within the prison system. Spruill, 372 F.3d at 232.

---

[6] The PLRA's exhaustion requirement applies to grievance procedures set forth in a NJDOC inmate handbook, even if that handbook is not formally adopted by a state administrative agency. Concepcion v. Morton, 306 F.3d 1347, 1355 (3d Cir. 2002).

9

B.   The PLRA's Application to Worthy

The PLRA's exhaustion requirement applies only to "prisoners" who were in custody at the time they filed their original complaint in federal court.  42 U.S.C. § 1997e(a); see Ahmed v. Dragovich, 297 F.3d 201, 210 (3d Cir. 2002) (affirming district court's denial of plaintiff-former prisoner's motion to amend where plaintiff was a prisoner at time he filed original complaint).  The PLRA defines "prisoners" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).  Here, Worthy filed his complaint on February 4, 2005, while he was still incarcerated at RSP.  Therefore, the PLRA's exhaustion requirement applies to Worthy's section 1983 claims.

C.   Whether Worthy Exhausted Administrative Remedies

Worthy contends that he exhausted his administrative remedies after submitting a letter to the NJSP administrator, Roy Hendricks.  The Court, noting that the SCO Defendants did not reply to Worthy's assertion, requested that they "provide [the Court with] supplemental briefing or further evidentiary materials addressing the plaintiff's claim that he exhausted all administrative remedies."  (12-23-05 Ord., at 5.)  In response, the SCO Defendants submitted (1) a reply brief that essentially reiterates their previous arguments concerning exhaustion, and

(2) an affidavit from Brenda Smith including attached copies of select pages from a NJSP 2001 Inmate Handbook describing the "Inmate Request Forms," "Interview Requests," and "Administrative Remedy Forms," and the procedures for submitting said forms. (SCO Defs. Reply Br.; 1-20-06 Smith Aff., at Ex. A.)[7]  These submissions are insufficient for the Court to grant summary judgment in favor of the SCO Defendants.

The SCO Defendants, despite alleging that Worthy failed to exhaust his administrative remedies even while at RSP, do not include a copy of the RSP inmate handbook or otherwise describe the grievance procedures at RSP.  Moreover, they have not, inter alia, (1) attested that Worthy had access to or received a copy of the NJSP handbook, (2) described the grievance procedure at NJSP or RSP through an affidavit or otherwise, or (3) indicated when an inmate's administrative remedies are exhausted at NJSP or RSP.[8]  Therefore, the Court will deny the motion for summary judgment without prejudice with leave to re-move upon providing the Court with an appropriate description — in accordance with

---

[7] The Court notes that the brief, although consisting of 10 pages in length, addresses the PLRA exhaustion issue — for which the Court requested the additional submission — for 1 1/2 pages. Instead of addressing the PLRA exhaustion issue, the SCO Defendants restate the facts of the case and provide further argument concerning qualified immunity.

[8] This information, at least in part, appears available to the defendants.  See, e.g., Grant v. Cathel, Civil Action No. 05-3956 (MLC), dkt. entry no. 22, Defs. Br. & Affs.

the Court's discussion _infra_ — of the administrative procedures at NJSP and RSP.[9]

## <u>CONCLUSION</u>

The Court, for the reasons stated _supra_, concludes that the SCO Defendants have not demonstrated that the plaintiff failed to exhaust his administrative remedies as required by the PLRA. Nonetheless, the Court denies the motion for summary judgment without prejudice with leave to re-move upon providing the Court with an appropriate description — in accordance with the Court's discussion _infra_ — of the administrative procedures at NJSP and RSP.  The Court will issue an appropriate order.


        s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

---

[9] The Court, finding that resolving the exhaustion issue possibly concludes this action, does not address the SCO Defendants' other arguments in support of the motion at this time.